Webb *v.* Albertson.

---

---

KINGS GENERAL TERM, July, 1848.    *McCoun, Edmonds, and Morse,* Justices.

## WEBB and others *vs.* ALBERTSON and others.

A bond taken in the names of the commissioners of highways of a town *virtute officii*, for the benefit of the town in its corporate capacity, and intended to relieve the taxable inhabitants of the town from the payment of a tax for a public improvement—viz. the extension and opening of a public highway—cannot be enforced against the obligors; the commissioners having no authority to take a bond of that nature, and the general policy of the law forbidding such a transaction.

So held, notwithstanding the improvement was intended to be a village improvement, local in its character, from which the inhabitants of the town at large would derive little or no advantage, and the obligors, as residents of the village, or owning property there, were, for the sake of the benefit to the village, willing to assume the cost of the improvement, and indemnify the town.

Commissioners of highways, in exercising their authority in respect to the laying out of highways, have no right to make conditions with parties interested. They have no right to say that, if they shall order a highway to be laid out, individuals shall assume, or become bound to pay, the expense.

DEMURRER to declaration in debt on a bond given to the commissioners of highways of the town of Southold.

*Geo. Miller*, for the defendants.

*J. H. Goldsmith*, for the plaintiffs.

*By the Court*, McCOUN, J.   If the action is sustainable at all, it is properly brought and is sustainable in the names of the present plaintiffs, successors in office of the obligees.   The right to sue in this manner is given by statute.   (2 *R. S. 2d ed.* 387, §§ 96, 97.   4 *Hill*, 196.   5 *Id.* 216.)   But the principal cause of demurrer is, that the bond was taken by the obligees as commissioners of highways, without authority of law, and in violation of their official duty.   If this objection is well taken, there is an end of the bond.   It is a nullity.

In the first place, the statute is relied on, which declares that " no sheriff or other officer shall take any bond, obligation or security by color of his office, in any other case or manner than such as are provided by law, and any such bond, obligation or security, taken otherwise than as herein directed, shall be void." (2 *R. S. 2d ed.* 214, § 60.)   This section is found among and in immediate connection with, several other provisions of the statute relating to sheriffs.   It is substantially a re-enactment of the old statute, prohibiting them from taking bonds or securities of any kind, *colore officii*, for ease and favor.   (7 *John.* 319. 8 *Id.* 98.)   " Other officers" besides sheriffs, included in the prohibition, are coroners, constables, and others of that description, whose duties in many respects are similar to those of sheriffs, who are equally exposed to temptation to grant indulgence and favor, and on whom it is quite as necessary to impose restraints.   But this provision of law is not of universal application to all classes and description of public officers; and to all bonds and securities which they may happen to take without the express authority of a statute for that purpose. The case of *The State* v. *The City of Buffalo*, (2 *Hill*, 434,) furnishes an instance of a state officer, or his agent, having ex-

ceeded his authority in lending out the property of the state and taking a bond for its return ; and yet the bond was held available to the state in an action upon it for the non-return of the property. So in the *Commissioners of Highways of Cortlandville* v. *Peck*, (5 *Hill*, 215,) there was a want of an express statutory authority for the acts of the commissioners in compounding penalties incurred for encroachments on the highway ; receiving the money and lending it out, and taking a note for its re-payment, yet it was held that their authority for so doing might be implied from their general powers and duties ; and as there was nothing contrary to public policy or the general law of the land in what they had done, they were entitled to sue and recover on the note. Still the question arises whether, irrespective of any statutory prohibition, the taking of the bond in question is not against the general policy of the law, and therefore as invalid as if it had been expressly forbidden ? It is a bond taken in the names of the commissioners of highways of the town, not for their own benefit individually, but *virtute officii*, for the benefit of the town in its corporate capacity, and was intended, as it would seem from the recitals and from the averments of the declaration, to relieve the taxable inhabitants of the town from the payment of a tax for a public improvement—viz. the extension and opening of a public highway. The averments show that the extension of the street, 60 feet wide, must have been to make a public highway of it and not a private road, since the latter could not have been more than two rods wide ; and there could have been no object in taking a bond to indemnify the town in laying out or opening a road for private use. No loss, damage or expense could result to the town from any such proceeding. It must then be understood that the bond was taken in fact upon a proceeding to lay out and open a public road. And why should this bond have been required ? In laying out a new road commissioners have a plain duty to perform. They are in the first place to judge of the necessity and propriety of the measure. If they deem it "necessary and proper," (§ 2 *of the act regulating highways and bridges in the counties of*

Webb *v.* Albertson.

*Suffolk, Queens and Kings, passed February* 23, 1830,) or if " in the opinion of the commissioners the public good requires it," (§ 47,) they may proceed to make their order or adjudication ; but they must first obtain the consent of the owner or occupant of the land through which the road is to pass, or they must have before them the petition of twelve freeholders of the town, verified by oath or affirmation. (§ 47.) Having made their order for laying out the road, they are to deliver it to the town clerk, whose business it is to post a copy of it by way of public notice of the proceeding, and then the commissioners are at liberty to agree with the owner as to the amount of damages to be paid for the use of his land, or they may accept a release from the owner, of all claim to such damages ; and if they cannot agree, or he will not release, then they are to proceed to have the damages assessed by a jury to be summoned before a justice for that purpose. When the damages are ascertained, and the expenses and charges are liquidated, adjusted and allowed by the board of supervisors, the amount is to be levied and collected as a tax in the town where the highway is situated. In all this proceeding the commissioners ought to have no other inducement for action than their regard for the public good. It is their duty to decide whether public convenience requires a new road or highway to be laid out or not. If they determine erroneously, either in making the order or in refusing to make it, an appeal lies. (§ 66.) They have no business to be tampering with parties and making conditions. They have no right to say that if they order a highway to be laid out, individuals shall assume or become bound to pay the expense. If the convenience or interest of the public requires it, and the commissioners are honestly of that opinion, the expense should be left where the law places it, a public charge upon the town. On the other hand, if in the opinion of the commissioners, the public good does not require the laying out of a new road as applied for, they ought not to swerve from their opinions by the offer of individuals to bear the expense. Such a step would look very much like surrendering their opinions and judgment to the highest bidder.

Webb *v.* Albertson.

If allowed to be practised it might become the means of the grossest injustice, dishonesty and oppression. The bond in question was probably taken from very honest motives. It recites that the commissioners had that day made an order for the extension of Third-street, in the village of Greenport, so as to reach the rail-road depot. It was intended to be a village improvement, local in its character, from which the inhabitants of the town at large would derive little or no advantage, and the obligors, as residents of the village or owning property there, were, for the sake of the village improvement, willing to assume the cost of it and indemnify the town. The commissioners doubtless thought they might safely make the arrangement and proceed as they have done under the law applicable to the whole town ; but the precedent is a dangerous one. Regarding it as a village improvement of a local character, distinct from an improvement for the general good of the town, there should have been a special law obtained conferring power to make it, before the commissioners undertook so to act, or assented to the offer of a few individuals to assume the responsibility of the many. The arrangement was calculated to substitute them for the public—to make them litigant parties in a contest with the owners of the property, relative to value and damage—and perhaps to diminish the amount, when it was understood that the burthen was to fall upon two or three persons instead of the town at large. We think that the commissioners not only exceeded their authority in making the agreement with the defendants, and in taking the bond, but that the general policy of the law forbids such a transaction. The bond therefore cannot be enforced.

Demurrer allowed.